IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 MAR 27 PM 1:48

U.S. F. . .
N. . . . . . .

| | | |
|---|---|---|
| SHIRLEY R. FOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. CV 99-B-2596-S |
| | ) | |
| JEFFERSON COUNTY DEPARTMENT | ) | |
| OF REVENUE, | ) | |
| | ) | |
| Defendant. | ) | |

# ENTERED

MAR 2 7 2002 *km*

## MEMORANDUM OPINION

Currently before the court is the Motion for Summary Judgment on all claims filed by

Defendant Jefferson County Department of Revenue ("defendant" or "Revenue Department").

In this action, Plaintiff Shirley R. Foy ("plaintiff" or "Foy") asserts claims of race discrimination

against defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e, *et seq.*, and 42 U.S.C. § 1981. (Compl. ¶ 1.) Upon consideration of the record, the

submission of the parties, the argument of counsel, and the relevant law, the court is of the

opinion that defendant's motion for summary judgment is due to be granted.

On January 28, 1999, plaintiff filed a charge of discrimination against defendant that

defendant received on February 26, 1999. (DX C.)[1] Plaintiff's charge alleges that "[b]lack

employees of the [Revenue Department] are treated in an unequal and unfair manner," and that

plaintiff's civil rights have been violated due to her "non-selection for several jobs and not even

being allowed to interview for most of those jobs." (*Id.*) The charge details only one instance of

an allegedly discriminatory failure to promote: the Revenue Department Director Randy

---

[1] The evidence attached to defendant's "Motion for Summary Judgment" filed on January
31, 2001, will be referenced as "DX" followed by the corresponding tab letter.

*38*

Godeke's refusal to allow plaintiff to apply for an Administrative Assistant IV position which was awarded to a white female. (*Id.*) The Charge alleges that Godeke told plaintiff that he would not let her apply, because she was not qualified as a result of having "had trouble dealing with and relating to the public." (*Id.*) On September 27, 1999, plaintiff brought this lawsuit against defendant alleging that defendant's failure to promote resulted from either race discrimination or retaliation.

## I. FACTUAL SUMMARY

Foy is an African-American female who began working for the Revenue Department at its satellite office in Homewood, Alabama, on January 28, 1988. (Compl. ¶¶ 5,7; DX N at 17.) Foy was hired as an Intermediate Clerk at a wage of $6.28 per hour. (DX A at 1.) On July 28, 1990, Foy was upgraded to the position of Senior Clerk at a wage of $8.42 per hour. (*Id.*) In 1996, Foy's position was retitled Administrative Assistant II. (*Id.*) Foy received a raise every year until transferring from the Revenue Department to the City of Birmingham on May 7, 1999. (*Id.*)

Defendant Jefferson County Department of Revenue ("Revenue Department" or "defendant") is an operating department of Jefferson County government responsible for the collection and distribution of numerous municipal, county, and state taxes. (DX A at 1.) Employment positions at the Revenue Department are classified, merit system positions under the jurisdiction of the Jefferson County Personnel Board ("Personnel Board"), a separate legal entity created by Alabama Act 245 (1948). (*Id.*)

Under Alabama Act 245 and the rules and regulations of the Personnel Board, all vacant positions in the Revenue Department must be filled by open competition under the procedures

2

outlined in the Personnel Board's rules.  (DX A at 1;DX B ¶ 4.10.)  The Personnel Board

advertises vacancies in the Revenue Department, and interested persons must submit their

applications to the Personnel Board.  (DX A at 2.)  The Personnel Board determines which

applicants are qualified for the position by conducting pre-employment background checks,

administering a written examination, and evaluating each applicant's training and experience.

(*Id.*; DX B ¶¶ 3, 5.)  The Personnel Board then ranks the qualified individuals and provides a

certified list of eligible candidates to the Revenue Department.  (DX A at 2.)  Names of eligible

persons are placed on the list in order of their examination grades ranked from highest or first to

lowest or last.  (DX B ¶ 4.1.)  The Revenue Department must fill open positions solely from the

list of eligible candidates certified by the Personnel Board.  (*Id.*; DX A at 2; DX B ¶ 4.10.)

Since beginning work at the Revenue Department, plaintiff sought a promotion for nine

Revenue Department positions.  (DX A at 2.)

**A. Senior Account Clerk position filled November 1996**

On November 23, 1996, Pamela Joyce Lyon, a white female, was selected for the

position of Senior Account Clerk.  (DX A at 2.)  The Senior Account Clerk's primary duty is to

coordinate the collection of delinquent accounts and bad checks with Jefferson County's outside

collection attorney and the District Attorney's Worthless Check Unit.  (*Id.*)  The names of both

Lyon and plaintiff appear on the certified list, and both were interviewed.  (DX E at 3,5.)

Godeke testified that Lyon was considered the most qualified candidate, because prior to being

selected for the position she had been performing the duties of the position as the primary back-

up in the absence of the incumbent and had already achieved familiarity with the duties of the

position and a working relationship with the County's collection attorney and employees in the

3

Worthless Check Unit.  (DX A at 3.)

**B.  Revenue Examiner position filled December 1996**

On December 23, 1996, Wesley S. Moore, a white male, was selected for the position of Revenue Examiner.  (DX A at 3.)  The Revenue Examiner's primary duty is to work with contractors to determine their level of licensing requirements under county and state business license codes.  (*Id.*)  The names of both Moore and Foy appear on the certified list.  (DX F at 1, 4.)  Prior to being selected, Moore had been employed by the Jefferson County Health Department in construction and maintenance.  (DX A at 3.)  Moore was also a self-employed construction contractor, and had recently received an accounting degree.  (*Id.*)  When the position was filled, Foy had neither construction experience nor a degree.  (*Id.*)  It was determined that Moore was the most qualified candidate because he had already worked in the construction and maintenance fields.  (*Id.*)

**C.  Senior Account Clerk position filled August 1997**

On August 19, 1997, Lynnette Stallings, a white female, was selected for the position of Senior Account Clerk.  (DX A at 3.)  The primary duty of this position was the reconciliation of bank statements and the distribution of funds collected by the Revenue Department to more than sixty government agencies.  (*Id.*)  When the vacancy occurred, there was no list available from the Personnel Board from which the vacancy could be filled.  (*Id.* at 4.)  The Personnel Board provisionally appointed Stallings to perform the function until a list of candidates could be provided to the Revenue Department.  (*Id.*)  The names of both Stallings and plaintiff appear on the certified list.  (DX G at 2, 4.)  Godeke testified that by the time the list was provided, Stallings had been performing the job duties for about four months and had excelled at the job.

4

(*Id.*)

**D.  Revenue Examiner position filled December 1997**

On December 6, 1997, John Powell, a white male, was selected for the position of Revenue Examiner.  (DX A at 4.)  The primary duty of this position was to visit all businesses in a geographic area of the county to determine compliance with state and county licensing requirements.  (*Id.*)  The names of both Foy and Powell appear on the certified list.  (DX H at 2, 5.)  Godeke testified that Powell was considered to be the most qualified candidate because he had been performing the duties of a Revenue Examiner for the City of Hueytown prior to his appointment.  (DX A at 4.)  Powell had a Master's Degree from Birmingham Southern at the time he was selected.  (*Id.*)

**E.  Administrative Coordinator position filled August 1998**

On August 11, 1998, Sharon Fairbanks, a black female, was selected for the position of Administrative Coordinator.  (DX A at 4.)  The primary duty of this position was to supervise Revenue Department employees at the Center Point satellite location.  (*Id.*)  The names of both Foy and Fairbanks appear on the certified list for this position, and both were interviewed.  (DX I at 1, 2.)  Godeke testified that Fairbanks was considered to be the most qualified candidate because of her leadership and communication skills.  (DX A at 5.)  Fairbanks conducted herself with confidence during the interview process and gave appropriate answers to all questions.  (*Id.*)

**F.  Administrative Assistant IV position filled October 1998**

On November 16, 1998, Lanoma Carter, a white female, was selected for the position of Administrative Assistant IV.  (DX A at 5.)  The primary duty of this position was to supervise the mail receipts division of the Revenue Department.  (*Id.*)  Although Carter's name appeared

on the certified list, plaintiff's did not because the Personnel Board determined that plaintiff was not qualified. (*Id.*; DX J; DX N at 54.) According to Godeke, Carter was determined to be the most qualified candidate for the position because of the extensive background, knowledge, and skills she had acquired through her long employment with Jefferson County, which began in 1977. (DX A at 5.) Carter had prior supervisory experience in other departments, and was familiar with the Personnel Board's rules and policies, because of her previous employment there. (*Id.*) Carter was "recognized as an excellent employee by all departments in Jefferson County," was "highly endorsed by all of her prior department heads," and "had a friendly personality and a positive attitude." (*Id.*)

## G. Accounting Assistant I position filled January 1999

On January 30, 1999, Deborah Cheatwood, a white female, was selected for the position of Accounting Assistant I. (DX A at 5-6.) The primary duty of the position was to assist in the clerical preparation of the results of business audits conducted by Jefferson County auditors. (*Id.* at 5.) The names of both Cheatwood and Foy appear on the certified list, and both were interviewed. (DX K at 1, 5.) Cheatwood was considered to be the most qualified candidate for the position because during the interview she stated that she desired to stay in the Revenue Department because she enjoyed the work and satisfaction of helping the public with problems. (DX A at 6.) On the other hand, according to Godeke, Foy indicated during the interview that she probably would not stay in the position or in the Revenue Department because she had recently earned a degree in accounting and had already applied or mailed out her resume to several businesses. (*Id.*) Foy, on the other hand, testified that she said she was seeking other jobs outside the system, but "wasn't looking to leave the county on an entry level position

6

somewhere else where I was making more money here." (DX N at 60.)  Cheatwood also had a

sense of excitement because the position offered her a financial promotion, but would have

offered Foy only a change in job title.  (*Id.*)  In the interview, Cheatwood gave quick

straightforward answers to questions about confidentiality of information.  (*Id.*)  When Foy was

asked about a problem she created by providing erroneous information about the County's

occupational tax to one of her classes and professors at University of Alabama at Birmingham,

she denied making the statement.  (*Id.*)  Customers had complained about Foy, but not about

Cheatwoood.  (*Id.*)

**H.  Administrative Coordinator position filled March 1999**

On March 22, 1999, Wanda Poore, a white female, was selected for the position of

Administrative Coordinator.  (DX A at 6.)  The primary duty of this position was to seve as

personal and confidential assistant to Godeke.  (*Id.*)  The names of both Poore and Foy appear on

the certified list, but only Poore was interviewed. (DX L at 1.)  Godeke testified that Poore was

considered the most qualified candidate because she had been serving as personal and

confidential assistant to him since April 1993 in the former position that was replaced by this

one. (DX A at 6.)  Godeke also testified that he had concerns about Foy serving in the position,

one duty of which was protecting confidential information, because she had given erroneous

advice to members of the public about the occupational tax. (DX A at 7.)

**I.  Administrative Coordinator position filled July 2000**

On July 15, 2000, Brenda Hicks, a white female, was selected for the position of

Administrative Coordinator. (DX A at 7.)  The primary duty of this position was to supervise

the Revenue Department employees at the Homewood satellite office. (*Id.*)  The names of both

Hicks and Foy appear on the certified list, and both were interviewed. (DX M at 1, 2.) Godeke testified that Hicks was considered to be the most qualified candidate because she had already served as an Administrative Assistant IV in the Revenue Department and had exhibited the qualities and knowledge required to advance to the next job level. (DX A at 7.) Hicks had performed many of the duties of Administrative Coordinator in her supervisor's absence including employee supervision. (*Id.*) Foy was not interviewed because she had already resigned from County employment and was earning more money at her new job than this position paid. (*Id.*)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be

8

believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

#### A. Liability under 42 U.S.C. § 1981

Foy alleges that she suffered from race discrimination in violation of Title VII and 42 U.S.C. § 1981. (Compl. ¶ 1.) Because both statutes have the same proof requirements and use the same analytical framework, the court's treatment of the Title VII claims applies to the § 1981 claims as well. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318 (11th Cir. 1998). However, unlike Title VII, § 1981 does not state a cause of action against a state actor. *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) (holding that a § 1981 liability does not lie against a county government). Under the reasoning in *Butts*, § 1983 provides the sole remedial scheme by which a § 1981 claim may be enforced against a state actor. *See id.* Because plaintiff's complaint makes no mention of § 1983, defendant's motion for summary judgment should be granted as to plaintiff's § 1981 claim.

#### B. Exhaustion of Administrative Remedies under Title VII

Before suing for discrimination under Title VII, a plaintiff must first exhaust her administrative remedies. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (citations omitted). To do so, plaintiff must file a timely charge of discrimination that has been verified with the EEOC. *Id.*

9

### 1. Verification of the Charge

The Charge plaintiff files must be verified:  "Charges shall be in writing under **oath or affirmation** and shall contain such information and be in such form as the Commission requires."  42 U.S.C. § 2000e-5(b) (emphasis added).  In *Vason v. City of Montgomery, Alabama*, the plaintiff did not fill out a "Charge of Discrimination" form, but rather sent a letter to the EEOC complaining of discrimination.  *See* 240 F.3d 905, 906 (11 th Cir. 2001).  The letter was not sworn to under oath or affirmation.  *Id.*  The Eleventh Circuit held that because the charge was not sworn to under oath or affirmation, and plaintiff had never attempted to amend it, plaintiff's claims under Title VII should be dismissed.  *See Vason*, 240 F.3d at 907.

On January 28, 1999, Foy filed a charge of discrimination against the Revenue Department.  (DX C.)  Although plaintiff signed the box indicating her intent to "declare under penalty of perjury that the foregoing is true and correct," she did not sign in the box wherein she could indicate her intent to "swear or affirm that [she] ha[s] read the above charge and that it is true to the best of [her] knowledge, information and belief."  (*Id.*)   Relying on *Vason*, defendant contends that plaintiff failed to make an EEOC charge under oath or affirmation and that this omission constitutes a failure to exhaust administrative remedies for which plaintiff's Title VII claims should be dismissed.  (Supp. Mot.)[2]  Defendant's reliance on *Vason* is misplaced.  An unsworn declaration in writing under penalty of perjury has the same force and effect as a sworn

_____

[2] Defendant's June 8, 2001, Supplement to Motion for Summary Judgment is referenced as "Supp. Mot."

declaration under oath or affirmation.  28 U.S.C. § 1746.[3]  An unsworn declaration in writing

under penalty of perjury satisfies the verification requirements of Title VII and EEOC

regulations.  *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).  Therefore,

plaintiff's written declaration of the Charge's truth under penalty of perjury satisfies Title VII's

verification requirement.

### 2. Timeliness of the Filing

For a charge to be timely, it must be filed within 180 days of the allegedly discriminatory

act.  *Wilkerson*, 270 F.3d at 1317.  If the plaintiff fails to file before this time elapses, the

plaintiff's claim is untimely and, therefore, the plaintiff is procedurally barred for failure to

exhaust her administrative remedies.  *See Delaware State College v. Ricks,* 449 U.S. 250, 256

(1980).

---------------

[3] 28 U.S.C. § 1746 reads as follows:

Wherever, under any law of the United States or under any rule, regulation, order, or
requirement made pursuant to law, any matter is required or permitted to be supported,
evidenced, established, or proved by the sworn declaration, verification, certificate, statement,
oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of
office, or an oath required to be taken before a specified official other than a notary public), such
matter may, with like force and effect, be supported, evidenced, established, or proved by the
unsworn declaration, certificate, verification, or statement, in writing of such person which is
subscribed by him as true under penalty of perjury, and dated, in substantially the following
form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under
penalty of perjury under the laws of the United States of America that the foregoing is
true and correct.  Executed on (date).
                                                        (Signature)".

(2) If executed within the United States, its territories, possessions or commonwealths: "I
declare (or certify, verify, or state) under penalty or perjury that the foregoing is true and
correct.  Executed on (date).
                                                        (Signature)".

Plaintiff filed her charge on January 28, 1999. (DX C.) Any claim arising out of an act that occurred over 180 days prior to the filing, January 28, 1999, is barred. *See Ricks*, 499 U.S. at 256. Therefore, any claim arising from defendant's failure to promote plaintiff to the Senior Account Clerk position filled November 1996, the Revenue Examiner position filled December 1996, the Senior Account Clerk position filled August 1997, or the Revenue Examiner position filled December 1997, is time-barred.[4]

## C. Standards of Substantive Law under Title VII

### 1. Disparate Treatment

In any action alleging disparate treatment by an employer, the plaintiff must prove that the employer acted with a discriminatory motive. *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977). To establish a prima facie case of discrimination, a plaintiff may employ direct evidence of discriminatory intent, statistical proof of a pattern of discrimination, or circumstantial evidence. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989). The evaluation of a plaintiff's evidence of the employer's intent differs, depending upon whether the plaintiff's proof is direct or circumstantial in nature.

There is no direct evidence to support plaintiff's claim of disparate treatment race discrimination. Thus, plaintiff must rely on circumstantial evidence to support her claims. Because plaintiff is relying on circumstantial evidence to support her claims, the court is governed by the familiar, tripartite framework established by the Supreme Court in *McDonnell*

---

[4] Though plaintiff contends that the allegedly discriminatory acts occurring prior to July 18, 1998, are "relevant to the issue of whether a discriminatory animus existed in the Department, and whether that animus prevented Ms. Foy from being promoted to those positions for which she did file a timely charge," plaintiff does not argue that the continuing violation doctrine should be applied to resurrect time-barred claims. (Pl.'s Resp. at 7-8.)

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997) (clarifying the standard to be applied under Eleventh Circuit jurisprudence). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53.

If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant's burden to rebut the presumption created in such a situation is one of production rather than proof, requiring defendant to articulate a legitimate, nondiscriminatory reason for its action. *Burdine*, 450 U.S. at 257-58.

If the defendant succeeds in carrying this burden, then any "presumption of discrimination created by the *McDonnell Douglas* framework drops from the case, and the factual inquiry proceeds to a new level of specificity." *Combs,* 106 F.3d at 1528 (quotation omitted). The plaintiff must then prove that the defendant's articulated reasons are a mere pretext for unlawful motives (i.e., discrimination). *Id.* If plaintiff does not offer evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions, defendant is entitled to summary judgment. *See Chapman v. AI Transport*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To avoid summary judgment, plaintiff must submit sufficient nonconclusory evidence that defendant's articulated legitimate reasons were pretextual. *Elrod v. Sears, Roebuck & Co.*,

13

939 F.2d 1466, 1471-72 (11th Cir. 1991); *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989). Plaintiff must put forth concrete evidence that casts sufficient doubt on defendant's proffered reasons such that a reasonable fact finder could conclude that those reasons did not actually motivate the employment decisions. *See Reeves v. Sanderson Plumbing Products, Inc.,* 120 S.Ct. 2097, 2108-09 (2000); *Combs*, 106 F.3d at 1538; *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1083-84 (11th Cir. 1990).

### 2. Retaliation

In order to establish a prima facie case of unlawful retaliation in violation of Title VII, plaintiff must show: (1) that she engaged in statutorily protected expression; (2) that she experienced an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *See Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999) (citation omitted). Once a prima facie case has been established, the defendant must come forward with legitimate, nondiscriminatory reasons for the employment action. *Id.* If the defendant offers legitimate reasons for the employment action, the burden shifts back to the plaintiff to prove that the reasons offered by the defendant are pretextual. *Id.*

### D. Liability for Disparate Treatment

Plaintiff alleges no discriminatory conduct by defendant other than its failure to promote plaintiff. (*See* Compl.) To establish a prima facie case of discriminatory failure to promote, plaintiff must show (1) that she is a member of a protected minority; (2) that she was qualified and applied for the promotion; (3) that she was rejected; and (4) other equally or less qualified employees who are not members of the protected minority were promoted. *See Denney v. City of Albany*, 247 F.3d 1172, 1183 (11 th Cir. 2001); *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253

14

(11th Cir. 2000); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11 th Cir. 2000);
*Combs*, 106 F.3d at 1539 n.11.

### 1. Senior Account Clerk position filled November 1996[5]

Plaintiff is a black female, who applied for this position with the Personnel Board.
(Compl. ¶ 5; DX A at 2; DX E at 5.)  Because plaintiff's name appears on the certified list of
eligibles, (DX E at 5), there is evidence that the Personnel Board determined that she was
qualified for the position, (DX A at 2).  Plaintiff was rejected, but Lyon, a white female, was
selected for the position.  (DX A at 2; DX E at 3, 5.)  Therefore, if plaintiff had filed a timely
charge of discrimination about this employment action, the court could assume a prima facie
case.

Defendant has articulated legitimate nondiscriminatory reasons for its decision to appoint
Lyon rather than plaintiff.  Godeke testified that Lyon was considered the most qualified
candidate because prior to being selected for the Senior Account Clerk position she had been
performing the duties of the position as the primary back-up in the absence of the incumbent and
had already achieved familiarity with the position's duties and a working relationship with those
with whom the Senior Account Clerk needed to work to perform her duties.  (DX A at 3.)
Because plaintiff offers no evidence upon which a reasonable jury could conclude defendant's
articulated reasons for failing to promote her are pretextual, defendant is entitled to judgment as
a matter of law on any claim that its failure to promote plaintiff to the Senior Account Clerk
position filled in November 1996 was discriminatory.

---

[5] Defendant's failure to promote plaintiff to this position provides no basis for recovery,
because plaintiff failed to file a charge of discrimination within 180 days of the adverse
employment action occurring on November 23, 1996. *See Wilkerson*, 270 F.3d at 1317.

15

### 2. Revenue Examiner position filled December 1996[6]

Plaintiff is a black female, who applied for this position with the Personnel Board. (Compl. ¶ 5; DX A at 2; DX F at 4.)  Because plaintiff's name appears on the certified list of eligibles, (DX F at 4), there is evidence that the Personnel Board determined that she was qualified for the position, (DX A at 2).  Plaintiff was rejected, but Moore, a white male, was selected for the position.  (DX E at 3, 5.)  Therefore, if plaintiff had filed a timely charge of discrimination about this employment action, and if plaintiff were as qualified or more qualified for the position than Moore, plaintiff could establish a prima facie case.

Plaintiff has not offered any evidence that she was as qualified for this position as Moore. Godeke testified that the primary duty of this position was to work with contractors to determine their level of compliance with licensing requirements.  (DX A at 3.)  While Moore had prior experience working in construction for Jefferson County and was a self-employed construction contractor, there is no evidence that plaintiff had any construction experience.  (*Id.*)  In December 1996, when the position was filled, Moore had an accounting degree, but plaintiff did not.  (*Id.*)  Therefore, though plaintiff has provided evidence that she was qualified for this position, she has offered no evidence that her qualifications matched those of Moore.

Even if plaintiff had established a prima facie case, defendant has articulated legitimate nondiscriminatory reasons for its decision to appoint  Moore rather than plaintiff.  Godeke testified that the primary duty of this position was to work with contractors to determine their level of compliance with licensing requirements.  (DX A at 3.)  Prior to being selected, Moore

---

[6] Defendant's failure to promote plaintiff to this position provides no basis for recovery, because plaintiff failed to file a charge of discrimination within 180 days of the adverse employment action occurring on December 23, 1996. *See Wilkerson*, 270 F.3d at 1317.

had worked in construction and maintenance at the Jefferson County Health Department. Moore was also a self-employed construction contractor, and had recently received an accounting degree. (DX A at 3.) There is ample evidence to support defendant's conclusion that Moore was more qualified than plaintiff. Because plaintiff offers no evidence upon which a reasonable jury could conclude defendant's articulated reasons for failing to promote her are pretextual, defendant is entitled to judgment as a matter of law on any claim that its failure to promote plaintiff to the Revenue Examiner position filled in November 1996 was discriminatory.

### 3. Senior Account Clerk position filled August 1997[7]

Plaintiff is a black female, who applied for this position with the Personnel Board. (Compl. ¶ 5; DX A at 2; DX G at 4.) Because plaintiff's name appears on the certified list of eligibles, (DX G at 4), there is evidence that the Personnel Board determined that she was qualified for the position, (DX A at 2). Plaintiff was rejected, but Stallings, a white female, was selected for the position. (DX A at 3; DX G at 2, 4.) Therefore, if plaintiff had filed a timely charge of discrimination about this employment action, there is evidence by which plaintiff could establish a prima facie case.

Assuming a prima facie case, defendant has established legitimate nondiscriminatory reasons for its decision to appoint Stallings rather than plaintiff. Godeke testified that when the vacancy for the position occurred there was no list available from the Personnel Board from which to fill the vacancy. (DX A at 4.) The Personnel Board provisionally appointed Stallings to perform the duties of the position until a list of candidates could be provided. (*Id.*) By the

---

[7] Defendant's failure to promote plaintiff to this position provides no basis for recovery, because plaintiff failed to file a charge of discrimination within 180 days of the adverse employment action occurring on August 19, 1997. *See Wilkerson*, 270 F.3d at 1317.

time the list was provided, Stallings had been performing the job duties for about four monoths and had excelled at the job. (*Id.*) Defendant maintains that Stallings was most qualified for the position because she had excelled at the job for four months after being provisionally placed in the position.

Plaintiff argues that this reason for appointing Stallings is a pretext for discrimination because Foy and other African Americans were more qualified than Stallings: "This assertion, however, merely raises the issue of why she was placed in the position provisionally and why more qualified African Americans were not allowed to compete for the provisional position." (Pl.'s Resp. at 7.)  In support of her contention, plaintiff invites comparison of the personnel evaluation forms contained in the files of Stallings and Foy.[8]  (*Id.*)  The following table presents the scores of both Foy and Stallings up to August 1997:

| Date | Foy's Score | Date | Stallings's Score |
|------|-------------|------|-------------------|
|  |  | 6/11/97 | 1 needs improvement; 7 meets expectations |
| 7/15/96 | 6 meets expectations; 2 commendables | 11/23/96 | 7 meets expectations; 1 commendable |
| 6/27/95 | 8 meets expectations; 2 commendables | 11/8/95 | 8 meets expectations |
| 12/27/94 | 88.45 | 5/3/95 | 87 |
| 7/7/94 | 88.23 | 11/4/94 | 86.89 |

---

[8]  In one rating system used in these forms, the evaluator assigns in order of worst to best evaluations of "below expectations," "needs improvement," "meets expectations," "commendable," and "exceeds expectations."  In the other, the evaluator assigns a number between ten and forty-nine for a "poor" rating, between fifty and sixty-nine for a "fair" rating, between seventy and eight-four for a "good" rating, and between eighty-five and one hundred for an "excellent" rating. (*See, e.g.*, PX 6.)

| 12/30/93 | 88 | 4/13/94 | 86.78 |
|----------|-------|----------|-------|
| 7/13/93 | 87.78 | 10/26/93 | 86.78 |
| 12/29/92 | 87.67 | 10/27/92 | 85.45 |
| 6/16/92 | 87.56 | 4/22/92 | 85 |
| 6/28/91 | 86.78 | 11/5/91 | 85.33 |
| 12/18/90 | 86.56 | 5/8/91 | 85 |
| 7/28/90 | 86.45 | | |
| 1/27/90 | 86.23 | | |
| 6/20/89 | 85.34 | | |
| 12/16/88 | 85.23 | 2/22/88 | 86 |
| 6/17/88 | 84 | 8/18/87 | 85.67 |
| | | 2/24/87 | 85.56 |

(PX 6, 7.)[9]

This evidence is not sufficient to create a jury question on the issue of whether Foy was more qualified than Stallings. First, there is no evidence that performance on personnel evaluations is the sole criterion on which the Revenue Department bases its employment decisions. Other criteria include public praise or admonition, educational background, familiarity with the position's duties, experience performing the position's duties, and the existence or absence of working relationships with other employees. (*See* DX A.) Second, comparison of the personnel evaluation scores of plaintiff and Stallings reveals that, taken in a light most favorable to plaintiff, that plaintiff was rated only marginally better than Stallings. Furthermore, the evaluations of both show that their supervisors consistently considered each to

---

[9] The evidence attached to "Plaintiff's Evidentiary Submissions in Opposition to Defendant's Motion for Summary Judgment" will be referenced as "PX" followed by the corresponding tab number.

be ready "to attain supervisory status." (PX 6, 7.)  "In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted.  A plaintiff must show not that the defendant's employment decisions were mistaken, but that they were in fact motivated by [race]."  *Lee*, 226 F.3d at 1253.  "Disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face."  *Id.* at 1254 (citation omitted).  Therefore, because plaintiff has failed to present evidence such that a reasonable jury could find that each of defendant's articulated reasons for not hiring plaintiff were pretextual, defendant is entitled to judgment as a matter of law on any claim that its failure to promote plaintiff to the Senior Account Clerk position filled in August 1997 was discriminatory.

### 4. Revenue Examiner position filled December 1997[10]

Plaintiff is a black female, who applied for this position with the Personnel Board. (Compl. ¶ 5; DX A at 2; DX H at 2.)  Because plaintiff's name appears on the certified list of eligibles, (DX H at 2), there is evidence that the Personnel Board determined that she was qualified for the position, (DX A at 2).  Plaintiff was rejected, but Powell, a white male, was selected for the position.  (DX A at 4; DX H at 2, 5.)  Therefore, if plaintiff had filed a timely charge of discrimination about this employment action, and if plaintiff were as qualified or more qualified for the position than Powell, plaintiff could establish a prima facie case.

---

[10] Defendant's failure to promote plaintiff to this position provides no basis for recovery, because plaintiff failed to file a charge of discrimination within 180 days of the adverse employment action occurring on December 6, 1997.  *See Wilkerson*, 270 F.3d at 1317.

Plaintiff has not offered any evidence that she was as qualified or more qualified for this position than Powell. Godeke testified that Powell was the most qualified candidate because he had been performing the duties of a Revenue Examiner for the City of Hueytown since April 1996. (DX A at 4.) Therefore, though plaintiff has provided evidence that she was qualified for this position, she has proffered no evidence that her qualifications matched those of Powell.

Even if plaintiff had established a prima facie case, defendant has articulated legitimate nondiscriminatory reasons for its decision to appoint Powell rather than plaintiff. Godeke testified that Powell was the most qualified candidate because he had been performing the duties of a Revenue Examiner for the City of Hueytown since April 1996. (DX A at 4.) There is ample evidence to support defendant's conclusion that Powell was more qualified than plaintiff. Because plaintiff offers no evidence upon which a reasonable jury could conclude defendant's articulated reason for failing to promote her are pretextual, defendant is entitled to judgment as a matter of law on any claim that its failure to promote plaintiff to the Revenue Examiner position filled in December 1997 was discriminatory.

### 5. Administrative Coordinator position filled August 1998

Because both plaintiff and Fairbanks, who was hired for the position, are black females, (Compl. ¶ 5; DX A at 4; DX O at 81), plaintiff cannot establish a prima facie case as to this claim. *See Denney*, 247 F.3d at 1183.[11] Defendant is entitled to summary judgment as a matter of law on any claim that its failure to promote plaintiff to the Administrative Coordinator position in August 1998 was discriminatory.

---

[11] At oral argument, counsel for plaintiff conceded that plaintiff could not prove a prima facie case as to this employment action.

### 6. Administrative Assistant IV position filled October 1998

Plaintiff is a black female, who applied for this position with the Personnel Board. (Compl. ¶ 5; DX N at 54.)  Because plaintiff's name does not appear on the certified list of eligibles, (DX J), there is evidence that the Personnel Board concluded that plaintiff was not qualified for the position, (DX A at 2).  Carter, a white female, was selected for the position. (DX A at 5; DX J at 2.)  Assuming plaintiff could establish a prima facie case, defendant offers two legitimate, nondiscriminatory reasons for its hiring decision.  First, Godeke testified that Carter was considered the most qualified candidate for the position because of her extensive background, knowledge, and skills, acquired through her long employment for Jefferson County, beginning in 1977.  (DX A at 5.) Carter had prior supervisory experience, and was familiar with the Personnel Board's rules and policies.  (*Id.*)  Carter was highly recommended by all her prior supervisors.  (*Id.*)  Second, Godeke maintains that the Revenue Department could not have promoted plaintiff, because her name was not on the certified list from the Personnel Board. (DX A at 5; *see* DX J.)

Plaintiff argues that the second reason is a pretext for discrimination, arguing that plaintiff's name does  not appear on the certified list because Godeke either would not allow her to apply for the position or would not recommend her for the position, because of his dissatisfaction with her communication skills.  (Pl.'s Resp. at 8-9; *see* DX O at 58-60.)  "A plaintiff in a discrimination case based on circumstantial evidence can avoid judgment as a matter of law by putting on a prima facie case and by producing evidence sufficient to discredit in the mind of a reasonable juror **all** of defendant's proffered nondiscriminatory reasons for its actions." *Combs*, 106 F.3d at 1543 (emphasis added).   The court need not reach the merits of

22

plaintiff's argument, because plaintiff offers no evidence that defendant's first proffered reason, that Carter was most qualified for the position, is pretext. *See id.* (holding that judgment as a matter of law for defendant was appropriate where plaintiff had established a prima facie case and produced evidence that all but one of defendant's proffered reasons were spurious). Therefore, because plaintiff failed to produce evidence sufficient to permit a reasonable juror to reject as spurious defendant's explanation that it promoted Carter rather than plaintiff because Carter was the most qualified candidate, defendant is entitled to judgment as a matter of law on any claim that its failure to promote plaintiff to the Administrative Assistant IV position in October 1998 was discriminatory. *See id.*

### 7. Accounting Assistant I position filled January 1999

Plaintiff is a black female, who applied for this position with the Personnel Board. (Compl. ¶ 5; DX A at 2; DX K at 1.) Because plaintiff's name appears on the certified list of eligibles, (DX K at 1), there is evidence that the Personnel Board determined that she was qualified for the position, (DX A at 2). Plaintiff was rejected, but Cheatwood, a white female, was selected for the position. (DX A at 5-6; DX K at 1, 5.) Therefore, if plaintiff were as qualified or more qualified for the position than Cheatwood, plaintiff could establish a prima facie case.

Plaintiff has offered sufficient evidence to establish that she was at least as qualified as Cheatwood, if not more so. Plaintiff received a degree in accounting in 1997. (DX N at 10-11.) There is no evidence that Cheatwood had any degree. However, Cheatwood did have experience

23

in bookkeeping and working with payroll taxes. (Cheatwood employment application.)[12]
Furthermore, Cheatwood had only worked in the Revenue Department since 1996, (PX 9), while
Foy had worked there since 1988, (DX N at 17). Therefore, plaintiff has proffered sufficient
evidence to establish a prima facie case.

Even though plaintiff has established a prima facie case, defendant has articulated
legitimate nondiscriminatory reasons for its decision to appoint Cheatwood rather than plaintiff.
Godeke testified that during Cheatwood's interview, Cheatwood said she wanted to stay within
the Revenue Department because she enjoyed the work. (DX A at 6.) Foy, on the other hand,
testified that she said she was seeking other jobs outside the system. (DX N at 60.) Attaining
the position would have offered Cheatwood, but not Foy, a financial promotion. (*Id.*)
Cheatwood gave quick and straightforward answers about confidentiality of information. (*Id.*)
Foy, on the other hand, provided erroneous information about the occupational tax to members
of the public, and then denied doing so at the interview. (*Id.*) Cheatwood's references were very
positive. (*Id.*) Godeke testified that he had received several verbal complaints from customers
concerning Foy, but no complaints concerning Cheatwood. (*Id.*)

Although plaintiff presents evidence that some of the reasons defendant articulates for
promoting Cheatwood rather than Foy could be pretext for discrimination, (*See* Pl.'s Resp at 11-
12.), plaintiff presents no evidence that she did not misinform members of the public about the
occupational tax and then deny it at the job interview and no evidence that Godeke had received
several verbal complaints about Foy, but none about Cheatwood. "Provided that the proffered

---

[12] In response to the court's question at oral argument about whether Cheatwood had any
accounting experience prior to her selection for this position, counsel for Defendant sent a letter
on April 6, 2001, to which Cheatwood's employment application was attached.

reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. An employer may make employment decisions "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Id.* (citation omitted). The court is not prepared to hold that an employee's response at a job interview that is deemed by an employer to be dishonest is not a legally sufficient reason for not promoting the employee. "A plaintiff in a discrimination case based on circumstantial evidence can avoid judgment as a matter of law by putting on a prima facie case and by producing evidence sufficient to discredit in the mind of a reasonable juror **all** of defendant's proffered nondiscriminatory reasons for its actions." *Combs*, 106 F.3d at 1543 (emphasis added). Therefore, because plaintiff failed to produce evidence sufficient to permit a reasonable juror to reject as spurious defendant's explanation that it promoted Cheatwood rather than plaintiff because plaintiff misinformed the public about the occupational tax and then denied her wrongdoing at the interview, defendant is entitled to judgment as a matter of law on any claim that its failure to promote plaintiff to the Accounting Assistant I position in January 1999 was discriminatory. *See id.*

### 8. Administrative Coordinator position filled March 1999

Plaintiff is a black female, who applied for this position with the Personnel Board. (Compl. ¶ 5; DX A at 2; DX L at 1.) Because plaintiff's name appears on the certified list of eligibles, (DX L at 1), there is evidence that the Personnel Board determined that she was qualified for the position, (DX A at 2). Plaintiff was rejected, but Poore, a white female, was selected for the position. (DX A at 6; DX L at 1.)

25

Assuming a prima facie case, defendant has articulated legitimate nondiscriminatory reasons for its decision to appoint Cheatwood rather than plaintiff.  Godeke testified that Poore was considered the most qualified candidate because she had been serving as personal and confidential assistant to him since April 1993 in the former position that was replaced by this one.  (DX A at 6.)  Godeke also testified that he had concerns about Foy serving in the position, because it "required strict confidentiality of employee files, litigation and other business related issues."  (*Id.* at 7.)  Godeke testified that he "had concerns over Ms. Foy protecting confidential information given her experience with improperly advising her UAB professor and class and providing them with erroneous information about the occupational tax."  (*Id.*)  Because plaintiff offers no evidence upon which a reasonable jury could conclude defendant's articulated reasons for appointing Poore rather than plaintiff are pretextual, defendant is entitled to judgment as a matter of law on any claim that its failure to promote plaintiff to the Administrative Coordinator position filled in March 1999 was discriminatory.

### 9. Administrative Coordinator position filled July 2000

Plaintiff is a black female, who applied for this position with the Personnel Board. (Compl. ¶ 5; DX A at 2; DX M at 1.)  Because plaintiff's name appears on the certified list of eligibles, (DX M at 1), there is evidence that the Personnel Board determined that she was qualified for the position, (DX A at 2).  Plaintiff was rejected, but Hicks, a white female, was selected for the position.  (DX A at 7; DX M at 1, 2.)

Assuming a prima facie case, defendant has articulated legitimate nondiscriminatory reasons for its decision to appoint Hicks rather than plaintiff.  Godeke testified that Hicks was considered the most qualified candidate for the position because she had already served as an

26

Administrative Assistant IV in the Revenue Department and had exhibited the qualities and knowledge required to advance to the next job level. (DX A at 7.) Foy was not interviewed because she had already resigned from County employment and was earning more money at her new job than this position paid. (*Id.*) Because plaintiff offers no evidence upon which a reasonable jury could conclude defendant's articulated reasons for appointing Poore rather than plaintiff are pretextual, defendant is entitled to judgment as a matter of law on any claim that its failure to promote plaintiff to the Administrative Coordinator position filled in July 2000 was discriminatory.

## E. Liability for Retaliation

Plaintiff also alleges that "defendant intentionally and wrongfully retaliated against plaintiff for her prior complaints protesting discriminatory treatment." (Compl. ¶ 26.) In order to establish a prima facie case of unlawful retaliation in violation of Title VII, plaintiff must show: (1) that she engaged in statutorily protected expression; (2) that she experienced an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *See Sullivan*, 170 F.3d at 1059.

The only protected activity engaged in by plaintiff is the filing of a charge of discrimination against defendant. (Compl. ¶ 26; DX C.) In retaliation claims brought under the opposition clause of 42 U.S.C. § 2000e-3(a), the Eleventh Circuit has held that in order to establish a prima facie case, a plaintiff must have a subjective belief that the employer engaged in an unlawful employment practice that is objectively reasonable in light of the facts and record presented. *Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997). Defendant argues that a plaintiff who alleges she suffered retaliation for filing an EEOC Charge is pursuing her

27

claim under the participation clause of 42 U.S.C. § 2000e-3(a), and that, in order to establish a prima facie case, plaintiff should be required to establish that she had a good faith reasonable basis for filing the Charge under the anti-retaliation provision.[13]  (Def's M. for S.J. at 14-15.) The court need not address this issue because it cannot say as a matter of law based on the facts and record before it that plaintiff did not have a reasonable, good faith belief that defendant had engaged in an unlawful employment practice.

Plaintiff filed a charge of discrimination against defendant on January 28, 1999.  (DX C.) Plaintiff has experienced three adverse employment actions occurring since January 28, 1999: she was not selected for an Accounting Assistant I position filled on January 30, 1999, and Administrative Coordinator positions filled March 27, 1999, and July 15, 2000.  However, plaintiff cannot establish a causal connection between the filing of the charge of discrimination and her not being hired on January 28, 1999, because the Revenue Department did not learn of that filing until February 26, 1999.  The court will assume without deciding that plaintiff can establish a prima facie case of retaliation for her non-selection for the Administrative Coordinator positions.

Thus, defendant must offer legitimate nondiscriminatory reasons for not selecting plaintiff for the two Administrative Coordinator positions.  *See Sullivan*, 170 F.3d at 1059. Defendant has met its burden of providing legitimate reasons for promoting Poore and Hicks rather than plaintiff.  *See supra* at 25-27.  Because plaintiff offers no evidence upon which a reasonable jury could conclude defendant's articulated reasons for appointing Poore and Hicks

---

[13] In *Wideman v. Wal-Mart Stores, Inc.*, the Eleventh Circuit was presented with this issue but did not decide it.  *See* 141 F.3d 1453, 1454-55 (11th Cir. 1998).

28

rather than plaintiff are pretextual, defendant is entitled to judgment as a matter of law on any claim that its failure to promote plaintiff to the Administrative Coordinator positions filled in March 1999 and July 2000 constituted unlawful retaliation.

### CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's motion for summary judgment is due to be granted.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this _27th_ day of March, 2002.

Sharon Lovelace Blackburn

**SHARON LOVELACE BLACKBURN**
United States District Judge

29